JASON WEISSBEIN (42874)
WEISSBEIN LAW, PLLC
5500 South Flamingo Road
Suite 203
Cooper City, Florida 33330
Telephone: (954) 593-1121
E-Mail: jason@weissbein.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

CARLOS CABRERA,

     Plaintiff,

v.

JP MORGAN CHASE BANK, NA
a/k/a JP MORGAN CHASE & CO.
d/b/a CHASE HOME FINANCE, LLC,

     Defendant.

_____/

**DEMAND FOR JURY TRIAL**

## <u>AMENDED COMPLAINT</u>

COMES NOW, the Plaintiff, CARLOS CABRERA, by and through the undersigned

counsel, and hereby files this Complaint for violations pursuant to 15 U.S.C. 1692, the Fair Debt

Collection Practices Act (FDCPA), violations of Florida Statute sections 559.55 through 559.785,

the Florida Consumer Collection Practices Act (FCCPA), violations of Florida Statute sections

501.201 through 501.213, the Florida Deceptive and Unfair Trade Practices Act (FDUTPA),

1

breach of an express contract, breach of the implied covenant of good faith and fair dealing, fraud, fraud pursuant to express savings clause of Rule of Civil Procedure 1.540(b) and request for relief from Consent Final Judgment, unjust enrichment and promissory estoppel and hereby requests an order requiring specific performance of the express agreement entered into between Plaintiff and Defendant and damages, as well as other equitable and declaratory relief, and for punitive damages upon proof, as well as for any other relief this Court deems just and proper, and as grounds therefor, alleges:

## JURISDICTION

1. Jurisdiction of this court arises under 15 U.S.C. 1692k (d) and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201.

2. Plaintiff's Federal and State Law claims against the Defendants derive from a common focus of operative fact and are of such character that Plaintiff would ordinarily be expected to try them in one judicial proceeding. Consequently, this court has pendent jurisdiction over Plaintiff's State law claims against the Defendants.

3. Venue is proper because the majority of the relevant events occurred within Miami-Dade County in the State of Florida, which is located within this District.  The contracts and violations upon which this action is based were entered into and committed and performance was made in Miami-Dade County, in Florida. Those contracts and violations provide that Miami-Dade County is the proper venue for any action arising out of the agreements or violations.

## PARTIES

4.  The Plaintiff, Carlos Cabrera (hereinafter, "Mr. Cabrera" or "Plaintiff"), is a natural person residing within Miami-Dade County, in Florida.

5.  The Defendant, JP Morgan Chase & Co. (hereinafter, "Chase" or "Defendant"), is a business, considered a "person," under Florida Statute 559.72, which regularly conducts business within Miami-Dade County, Florida, and was at all times relevant to this complaint using instruments of interstate commerce to facilitate the collection of debts owed or asserted to be due by Plaintiff by its agents located in Miami-Dade County, in Florida.

## FACTS

6.  On April 13, 2009 Defendant, Chase, filed a one-count mortgage foreclosure complaint against Plaintiff, Mr. Cabrera.  The complaint alleged entitlement to *in rem* relief regarding the subject property located at 5605 SW 108 Court, Kendall, Florida, 33173.

7.  Years of frustration ensued following numerous submissions of modification applications by Mr. Cabrera.  Chase repeatedly confirmed receipt of application materials and then later advised that the documents were not received and requiring submission of updated application materials.

8.  On or about June 21, 2013, Mr. Cabrera received notice of a non-jury trial scheduled for August 6, 2013.  On or about July 3, 2013, Chase acknowledged receipt of the materials necessary for review of Mr. Cabrera's Home Affordable Modification Program (hereinafter "HAMP") application previously submitted.

9.  Mr. Cabrera's priority was to be finally afforded a good faith review of his HAMP application.  In order that his application would be finally reviewed in earnest, a Consent Final Judgment was entered as a result of Mr. Cabrera's consent to the entry of judgment.

10. In exchange Mr. Cabrera received the promise of an extended foreclosure sale date of at least one-hundred twenty (120) days from the date of the judgment for the express purpose of allowing Chase sufficient time to complete the HAMP application for the loan underlying the foreclosure lawsuit prior to a foreclosure sale.

11. According to plan Mr. Cabrera's loan modification application was approved on or about August 13, 2013 and the parties entered into a HAMP Modification Settlement Agreement.

12. As is customary, Mr. Cabrera was first offered a three (3) month HAMP Trial Period Modification Agreement (hereinafter "Trial Agreement" or "Phase I").

13. Mr. Cabrera promptly accepted the agreement and timely made all payments pursuant to Phase I.

14. On November 7, 2013, proof of all payments having been timely made pursuant to the Trial Agreement were sent to counsel for Chase in order for a HAMP Permanent Modification Agreement (hereinafter "Permanent Agreement" or "Phase II") to be prepared for Mr. Cabrera's acceptance in accordance with the terms of Phase I.

15. On November 8, 2013, the Permanent Agreement was sent to Mr. Cabrera, which was executed on November 20, 2013 at a Chase branch where it was notarized by a Chase agent and payment was then timely made on November 27, 2013, prior to the required acceptance date of December 1, 2013.

16. Chase accepted payments from Mr. Cabrera pursuant to said Agreement until April 2014 at which point Chase refused to accept additional payments.  Chase presently continues in

possession of all payments made by Mr. Cabrera pursuant to both phases of the HAMP Modification Agreement process. (See copy of HAMP Agreement and proof of payments tendered and accepted attached hereto as Exhibit "A").

17. The basis for the refusal of payment at that time was said to be a missing flood insurance document, which was, in fact, timely provided to Chase.

18. Mr. Cabrera has never had a lapse in flood insurance coverage for the subject property and provided all required evidence of such information to upon request from Chase.

19. Following Chase's refusals, the requested documents were provided again to Chase's counsel on several occasions.  The declarations of insurance on their face evidenced a seamless and uninterrupted period of coverage beyond the relevant time periods at issue. Chase, nevertheless, continued to refuse payments.

20. Despite receipt of the declarations of insurance evidencing coverage beyond the relevant time periods, Chase continued to claim there was an issue.

21. On May 16, 2014, immediately following the first declined payment, Mr. Cabrera filed a Motion to Compel Enforcement of Permanent Modification Settlement Agreement (hereinafter "May 16, 2014 Motion") in the foreclosure action.

22. The court in that case was first presented with Mr. Cabrera's May 16, 2014 Motion on June 6, 2014 when ruling was deferred so the parties could exchange the documentation and resolve the matter.

23. The alleged missing documentation as well as proof of its timely submission to Chase upon accepting the Permanent Agreement in November 2013 was provided to counsel for Chase. Chase continued to refuse payments.  Three more hearings followed upon Mr. Cabrera's May 16, 2014 Motion in the foreclosure action on June 25, 2014, August 5, 2014 and

August 12, 2014.  (See copies of declaration pages for flood insurance previously existing on property and evidence of insurance company's name change attached hereto as Exhibit "B").

24. Meanwhile, Chase instructed Mr. Cabrera to utilize their internal appeal process, which included submission of additional documentation.  Mr. Cabrera complied and Chase presented an entirely different agreement that sought to raise the modified monthly payments by approximately $750.00.  Mr. Cabrera never acquiesced to the change and insisted that Chase comply with the Permanent Agreement already consummated in November 2013.

25. An e-mail dated July 15, 2014 was sent to the undersigned from Chase's counsel stating what was alleged to be "[t]he only piece of information we need at this point [in order for Chase to continue accepting payments pursuant to the agreement]."  Reference was made to the declaration of flood insurance document regarding a portion, which read "effective date March 1, 2014," as a potential source of problem even though the same document indicated right beside, that the period of coverage was September 12, 2013 – September 12, 2014.

26. It was quickly resolved that the March 1, 2014 date was merely a reference to the insurance company assuming a new name and reissuing a declaration page under their new letterhead. This information was communicated to Chase's counsel, John Bosco, on the phone upon explanation from Mr. Cabrera's insurance agent and Mr. Bosco indicated his understanding.

27. The fact is, nevertheless, readily apparent on the face of the insurance documents themselves.  The document indicating the March 1, 2014 date was produced merely for

purpose of indicating that "Liberty American Select Insurance Company" was now called "Philadelphia Indemnity Insurance Company." None of the documents suggest any lapse in coverage. Nevertheless, Chase continued with its position that there could be an issue despite having received the two previously issued declarations of insurance evidencing the seamless and uninterrupted periods of coverage.

28. Just prior to the August 5, 2014 hearing, on Thursday, July 30, 2014, Chase indicated in an e-mail, their agreement to the originally modified terms. The e-mail sent from Chase's counsel to the counsel for Mr. Cabrera requested to again postpone the hearing scheduled for August 5, 2014. Counsel stated that "[w]e are seeking investor permission to make an exception (unfortunately this may take another week) and modify to the original terms your client is requesting. If the investor will not cooperate we plan on proceeding to repurchase the loan and modify to the original terms. Either way, the original modification terms would be put into place as [Mr. Cabrera is] seeking."

29. Mr. Cabrera's counsel responded both by e-mail and by phone to explain that the hearing could not be postponed because said counsel was departing the law firm the day following the hearing. Mr. Cabrera's counsel, being uniquely familiar with the history of the matter, had specifically scheduled that date as his final day at the firm for the purpose of finalizing Mr. Cabrera's matter.

30. Mr. Cabrera's counsel, nevertheless, suggested that since the parties were in agreement with regard to the dispute, Mr. Cabrera would consent to an Agreed Order pursuant to the terms described in counsel for Chase's e-mail. Chase declined to assent to the Agreed Order – on its own terms.

31. Chase then appeared at the August 5, 2014 hearing with a response to Mr. Cabrera's May 16, 2014 motion and presented said response to the court and Mr. Cabrera, for the first time, in open court.  Presentation was done in such manner despite having had an opportunity to present it to counsel for Mr. Cabrera during the approximately thirty (30) minutes spent discussing the matter prior to the hearing.  Chase's counsel further claimed to be unaware of the July 30, 2014 e-mail until furnished with a copy by Mr. Cabrera's counsel.

32. Chase's response raised, for the first time, an issue of jurisdiction to enforce the settlement in that action based upon the Agreement being consummated after entry of the Final Judgment.

33. Upon presentation of Chase's altered legal position at the August 5, 2014 hearing Mr. Cabrera was first able to determine Chase's motives for declining the payments were malign and not a result of an alleged missing insurance document.

34. An assessment, at this time, of the course of events that unfolded as to Mr. Cabrera indicate Chase's conformity to the same manner of conduct complained of in a class action lawsuit filed against Chase in the United States District Court for the Northern District of California in May 2012, *Shelly A Clements, et al. v. JP Morgan Chase Bank, N.A.*, 3:12-cv-02179-JCS, and resolved by settlement in June 2014.

35. Chase's breach of the HAMP Permanent Modification Agreement entered into with Mr. Cabrera in this case, was done with the same malicious intention of securing the property with a more expensive flood insurance policy through American Security Insurance Company with whom it maintains a special relationship.  Chase, as servicer of Mr. Cabrera's loan, selected an insurance provider based on an undisclosed lucrative

arrangement under which Chase might receive commissions, kickbacks and other pecuniary gain in exchange for selecting that particular insurance provider at the expense of Mr. Cabrera.

36. Despite knowledge of sufficient and better flood insurance already securing the subject property, Chase continued to employ the same conduct complained of in the *Clements* case to force, for its own financial benefit, a force-placed policy of flood insurance with American Security Insurance Company where such a policy was known to be unnecessary.

37. The court in the foreclosure action again deferred ruling and allowed Mr. Cabrera six (6) days to respond to the jurisdictional question.  Mr. Cabrera's reply included a Motion to Vacate Final Judgment Pursuant to Fla. R. Civ. P. 1.540(b), *nunc pro tunc*, as of May 16, 2014.

38. On August 12, 2014 the court in the foreclosure action denied Mr. Cabrera's May 16, 2014 Motion based upon a decision of the Third District Court of Appeal of Florida, *Vargas v. Deutsche Bank Nat'l Trust Co.*, 104 So. 3d 1156 (Fla. 3d DCA 2012), and found that the court was without jurisdiction in that action to determine enforceability of the settlement agreement because the agreement was entered into after the date of the Consent Final Judgment.  The court also entered an order summarily denying Mr. Cabrera's Motion to Vacate Judgment pursuant to Florida Rule of Civil Procedure 1.540(b).

39. An appeal followed in the Third District Court of Appeal of Florida for review of both orders entered on August 12, 2014.

40. Mr. Cabrera's Request to Stay Proceedings in the foreclosure action pending appeal has not been granted.  Consequently, the subject property remains subject to a foreclosure sale scheduled to occur on October 20, 2014 as of the time of filing this action.  The appeal in

the Third District Court of Appeal of Florida remains pending as of the date of filing this action.

## COUNT I

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

41. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

42. This is an action brought by a consumer for violations of the above the FDCPA, 15 U.S.C. 1692k (d), in connection with a purported debt.

43. The Defendant is a debt collector, as defined by 15 U.S.C. § 1692a(6).

44. The Defendant violated the FDCPA by multiple violations of § 1692e (2)(a) and 1692e(10) for the false representation of the character, amount, or legal status of the alleged debt and by the false representation and deceptive means to attempt to collect a debt and to obtain information concerning Plaintiff.

45. The Defendant also violated the FDCPA by violations of § 1692f(5) and 1692f(6)(A) by causing charges to be made to Plaintiff for communications by concealment of the true purpose and by taking and threatening to take non-judicial action to effect dispossession or disablement of property where there was no present right to possession of the property.

46. Defendants violations also included the procuring of agents to appear at Plaintiff's home on September 24, 2014 under the guise of police activity in an effort to harass, embarrass and threaten Plaintiff, claiming, attempting and threatening to enforce a debt, knowing that such debt is not legitimate, communicating with Plaintiff directly concerning the alleged debt while aware of Plaintiff's representation by counsel, and by causing charges to be

made to Plaintiff for communications by concealment of the true purpose of the communication.

47. The defendants' collection practices in attempting to collect the alleged debt, and the defendants' continued pursuance of it, despite written correspondence specifying satisfaction of the debt such that would facilitate a reasonable reinvestigation of the matter are violations of the FDCPA.

48. Further, Defendant's unlawful design, compilation and furnishing of a form used to create false belief in the plaintiff that a person other than the defendant was participating in the collection of the debt, when in fact, such person was not so participating is also a violation of the FDCPA.

49. Defendant violated FDCPA at 15 U.S.C. 1692, by engaging in the acts alleged herein, including the following practices:

a. Chase force-placed flood insurance on Mr. Cabrera's secured property through American Security Insurance Company despite knowledge of an already existing policy through Liberty American Select Insurance Company (now called Philadelphia Indemnity Insurance Company), which had never lapsed, and made no effort to correct its error, but instead, breached the Permanent Modification Settlement Agreement entered into with Mr. Cabrera;

b. Upon being made aware of the duplicate insurance policies purchased by Chase on behalf of Mr. Cabrera, Chase ignored the evidence of such fact and manufactured and fabricated unfounded bases upon which to continue to its noncompliance with the terms of the settlement agreement with Mr. Cabrera;

c.  Where Chase misrepresented facts to the court in the foreclosure action related to the subject property in order that the court would decline jurisdiction to determine the enforceability of the parties' agreement;

d.  Where Chase made false representations of cooperation and reconciliation with regard to the subject agreement, both orally and in writing, to Mr. Cabrera's counsel in order to lull Mr. Cabrera into a false sense of security that Chase was acting in good faith when, in fact, Chase was biding its time to continue its breach in aid of bad faith litigation tactics,

e.  Where Chase entered into an agreement with Mr. Cabrera in bad faith in order to procure Mr. Cabrera's consent to a Final Judgment of Foreclosure with the intention of swindling Mr. Cabrera despite promises to modify his home.

f.  Where Chase entered into a Permanent Modification Agreement with Mr. Cabrera in bad faith with the intention of breaching said agreements after Chase accepted payments from Mr. Cabrera pursuant to the agreement;

g.  Where Chase force-placed flood insurance with sufficient flood insurance already in place, choosing an insurance provider in bad faith and contrary to the parties' reasonable expectations by subjecting Mr. Cabrera to pay grossly inflated premiums in order to cover the cost of unnecessary insurance coverage; coverage in excess of the replacement cost of the covered dwelling; and commissions and kickbacks (through captive reinsurance schemes) Chase accepted from the insurance providers that it selected;

h.  Failing to make any attempt to determine that flood insurance was already in place, or to obtain flood insurance in the open market or otherwise reasonably exercising its

discretion in selecting insurance providers and instead selecting insurance providers based upon arrangements where any needed flood insurance policies are repeatedly purchased at inflated premiums through the same companies in order to maximize Chase's profits through commissions and undisclosed agreements for kickbacks;

i.  Charging excessive and unreasonable flood insurance premiums to Plaintiff while providing excessive and unnecessary insurance coverage;

j.  Accepting and keeping as their own profits percentage-based commissions on force-placed flood insurance policies charged to Plaintiff, thus creating an incentive for Chase to select the most expensive policy available in order to maximize the commission it receives;

k.  Accepting purported reinsurance premiums and/or commissions in return for placing borrowers with particular force-placed insurance providers;

l.  Backdating force-placed insurance policies to cover time periods which have already passed and for which there was absolutely no risk of loss because there was no flood;

m.  Procuring force-placed insurance policies to cover time periods during which Plaintiff was already covered pursuant to a Lender's Loss Payable Endorsement; and

n.  Failing to provide Mr. Cabrera with any opportunity to opt out of having their force-placed insurance policies provided by an insurer with whom Chase had a commission and/or captive reinsurance arrangement.

50. By these acts, Chase has committed violations deemed unlawful pursuant to FDCPA at 15 U.S.C. 1692.  The foregoing violations of the FDCPA are among the Defendants' standard procedures and practices towards consumers such as the Plaintiff, for which the Defendants are motivated by enhanced profits.

51. As a result of these violations by Defendant, Plaintiff suffered direct and proximate harm and injury and is entitled to equitable relief and damages, including punitive damages, in the court's discretion, upon proof to be demonstrated at trial, as well as enjoinment of Defendant from further violations pursuant to 15 U.S.C. 1692.

52. Thus, the plaintiff seeks damages and, to the extent possible, injunctive and declaratory relief, as well as the costs of the action together with attorney's fees as determined by the Court, and any other relief this Court deems just and proper.

## COUNT II

## VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA)

53. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

54. Defendant violated the FCCPA at Florida Statute 559.715 by failing to timely notify Plaintiff of an assignment to Defendant of a consumer debt to Defendant claimed to be a real party in interest.

55. Defendant violated the FCCPA at Florida Statute 559.72 (1), (9), (18) and (19) by procuring agents to appear at Plaintiff's home on September 24, 2014 under the guise of police activity in an effort to harass, embarrass and threaten Plaintiff, claiming, attempting and threatening to enforce a debt, knowing that such debt is not legitimate, communicating with Plaintiff directly concerning the alleged debt while aware of Plaintiff's representation by counsel, and by causing charges to be made to Plaintiff for communications by concealment of the true purpose of the communication.

56. Defendant violated FCCPA at Florida Statute 559.72, by engaging in the acts alleged herein, including the following practices:

a. Chase force-placed flood insurance on Mr. Cabrera's secured property through American Security Insurance Company despite knowledge of an already existing policy through Liberty American Select Insurance Company (now called Philadelphia Indemnity Insurance Company), which had never lapsed, and made no effort to correct its error, but instead, breached the Permanent Modification Settlement Agreement entered into with Mr. Cabrera;

b. Upon being made aware of the duplicate insurance policies purchased by Chase on behalf of Mr. Cabrera, Chase ignored the evidence of such fact and manufactured and fabricated unfounded bases upon which to continue to its noncompliance with the terms of the settlement agreement with Mr. Cabrera;

c. Where Chase misrepresented facts to the court in the foreclosure action related to the subject property in order that the court would decline jurisdiction to determine the enforceability of the parties' agreement;

d. Where Chase made false representations of cooperation and reconciliation with regard to the subject agreement, both orally and in writing, to Mr. Cabrera's counsel in order to lull Mr. Cabrera into a false sense of security that Chase was acting in good faith when, in fact, Chase was biding its time to continue its breach in aid of bad faith litigation tactics;

e. Where Chase entered into an agreement with Mr. Cabrera in bad faith in order to procure Mr. Cabrera's consent to a Final Judgment of Foreclosure with the intention of swindling Mr. Cabrera despite promises to modify his home.

f.  Where Chase entered into a Permanent Modification Agreement with Mr. Cabrera in bad faith with the intention of breaching said agreements after Chase accepted payments from Mr. Cabrera pursuant to the agreement;

g.  Where Chase force-placed flood insurance with sufficient flood insurance already in place, choosing an insurance provider in bad faith and contrary to the parties' reasonable expectations by subjecting Mr. Cabrera to pay grossly inflated premiums in order to cover the cost of unnecessary insurance coverage; coverage in excess of the replacement cost of the covered dwelling; and commissions and kickbacks (through captive reinsurance schemes) Chase accepted from the insurance providers that it selected;

h.  Failing to make any attempt to determine that flood insurance was already in place, or to obtain flood insurance in the open market or otherwise reasonably exercising its discretion in selecting insurance providers and instead selecting insurance providers based upon arrangements where any needed flood insurance policies are repeatedly purchased at inflated premiums through the same companies in order to maximize Chase's profits through commissions and undisclosed agreements for kickbacks;

i.  Charging excessive and unreasonable flood insurance premiums to Plaintiff while providing excessive and unnecessary insurance coverage;

j.  Accepting and keeping as their own profits percentage-based commissions on force-placed flood insurance policies charged to Plaintiff, thus creating an incentive for Chase to select the most expensive policy available in order to maximize the commission it receives;

k.   Accepting purported reinsurance premiums and/or commissions in return for placing borrowers with particular force-placed insurance providers;

l.   Backdating force-placed insurance policies to cover time periods which have already passed and for which there was absolutely no risk of loss because there was no flood;

m.  Procuring force-placed insurance policies to cover time periods during which Plaintiff was already covered pursuant to a Lender's Loss Payable Endorsement; and

n.   Failing to provide Mr. Cabrera with any opportunity to opt out of having their force-placed insurance policies provided by an insurer with whom Chase had a commission and/or captive reinsurance arrangement.

57. By these acts, Chase has committed violations deemed unlawful pursuant to FCCPA Florida Statute 559.72.

58. As a result of these violations by Defendant, Plaintiff suffered direct and proximate harm and injury and is entitled to equitable relief and damages, including punitive damages, in the court's discretion, upon proof to be demonstrated at trial, as well as enjoinment of Defendant from further violations pursuant to Florida Statute 559.77.


**COUNT III**

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)**

59. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

60. The actions stated herein and carried out by the defendant were violations of Florida State and Federal Law, and are therefore unfair and/or deceptive trade practices as defined by

Florida Statute 501.203 (3) and are subject to civil liability as provided in Florida Statute 501.2078.

61. Unfair and/or deceptive trade practices are a violation of the Florida Deceptive and Unfair Trade Practices Act pursuant to 501.204 (1).

62. Defendant has unlawfully engaged in unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade and commerce as provided in Florida Statute 501.204 (1).

63. Defendant has further engaged in unlawful acts to victimize a Homeowner in a residential foreclosure proceeding as defined in Florida Statute 501.2078 (1)

64. Chase violated the FDUTPA by engaging in the acts alleged herein, including the following practices:

   a. Chase force-placed flood insurance on Mr. Cabrera's secured property through American Security Insurance Company despite knowledge of an already existing policy through Liberty American Select Insurance Company (now called Philadelphia Indemnity Insurance Company), which had never lapsed, and made no effort to correct its error, but instead, breached the Permanent Modification Settlement Agreement entered into with Mr. Cabrera;

   b. Upon being made aware of the duplicate insurance policies purchased by Chase on behalf of Mr. Cabrera, Chase ignored the evidence of such fact and manufactured and fabricated unfounded bases upon which to continue to its noncompliance with the terms of the settlement agreement with Mr. Cabrera;

c.  Where Chase misrepresented facts to the court in the foreclosure action related to the subject property in order that the court would decline jurisdiction to determine the enforceability of the parties' agreement;

d.  Where Chase made false representations of cooperation and reconciliation with regard to the subject agreement, both orally and in writing, to Mr. Cabrera's counsel in order to lull Mr. Cabrera into a false sense of security that Chase was acting in good faith when, in fact, Chase was biding its time to continue its breach in aid of bad faith litigation tactics,

e.  Where Chase entered into an agreement with Mr. Cabrera in bad faith in order to procure Mr. Cabrera's consent to a Final Judgment of Foreclosure with the intention of swindling Mr. Cabrera despite promises to modify his home.

f.  Where Chase entered into a Permanent Modification Agreement with Mr. Cabrera in bad faith with the intention of breaching said agreements after Chase accepted payments from Mr. Cabrera pursuant to the agreement;

g.  Where Chase force-placed flood insurance with sufficient flood insurance already in place, choosing an insurance provider in bad faith and contrary to the parties' reasonable expectations by subjecting Mr. Cabrera to pay grossly inflated premiums in order to cover the cost of unnecessary insurance coverage; coverage in excess of the replacement cost of the covered dwelling; and commissions and kickbacks (through captive reinsurance schemes) Chase accepted from the insurance providers that it selected;

h.  Failing to make any attempt to determine that flood insurance was already in place, or to obtain flood insurance in the open market or otherwise reasonably exercising its

discretion in selecting insurance providers and instead selecting insurance providers based upon arrangements where any needed flood insurance policies are repeatedly purchased at inflated premiums through the same companies in order to maximize Chase's profits through commissions and undisclosed agreements for kickbacks;

i.   Charging excessive and unreasonable flood insurance premiums to Plaintiff while providing excessive and unnecessary insurance coverage;

j.   Accepting and keeping as their own profits percentage-based commissions on force-placed flood insurance policies charged to Plaintiff, thus creating an incentive for Chase to select the most expensive policy available in order to maximize the commission it receives;

k.   Accepting purported reinsurance premiums and/or commissions in return for placing borrowers with particular force-placed insurance providers;

l.   Backdating force-placed insurance policies to cover time periods which have already passed and for which there was absolutely no risk of loss because there was no flood;

m.   Procuring force-placed insurance policies to cover time periods during which Plaintiff was already covered pursuant to a Lender's Loss Payable Endorsement; and

n.   Failing to provide Mr. Cabrera with any opportunity to opt out of having their force-placed insurance policies provided by an insurer with whom Chase had a commission and/or captive reinsurance arrangement.

65. By these acts, Chase has committed violations deemed unlawful pursuant to FDUTPA Florida Statute 501.204 (1) and 501.2078.

66. As a result of these violations by Defendant, Plaintiff suffered direct and proximate harm and injury and is entitled to damages pursuant to Florida Statute 501.2078.

**COUNT IV**

**BREACH OF CONTRACT**
**BREACH OF THE EXPRESS TERMS OF THE HAMP PERMANENT MODIFICATION**
**AGREEMENT**

67. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

68. This is an action for specific performance of a contract modifying a loan agreement and for damages concerning real property located in Miami-Dade County, Florida.

69. Plaintiff is the owner of the following described real property in Miami-Dade County located at 5605 SW 108 Court, Kendall, Florida 33173.

70. On November 21, 2013, Plaintiff and Defendant entered into a written contract, a copy being attached hereto as Exhibit "A."

71. Plaintiff tendered all required payments and complied in all material respects pursuant to said agreement.

72. Defendant refused to accept the tender of payment due April 1, 2014 thereby breaching the agreement of the parties.  Defendant also retains all payments tendered by Plaintiff, to date, pursuant to the parties agreement, to wit:

73. Plaintiff offers to tender all payments due, to date, pursuant to the agreement of the parties.

74. Plaintiff has performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the contract, by timely tendering all required payments pursuant to the agreement until the breach and by performing, in all material respects, all other conditions, covenants and promises required of Plaintiff pursuant to the contract.

75. Defendants breached November 2013 agreement entered into with Plaintiff, after accepting payments pursuant to the agreement for seven (7) months), by failing and refusing to perform in good faith to continue in their promise to accept the agreed upon modified monthly payments of $1,411.57.

76. As a result of Defendant's breach of the agreement entered into with Plaintiff, Plaintiff has been damaged thereby, in addition to the scheduled sale of his home at a foreclosure sale on October 20, 2014, in the cost of pursuing this and other legal action for enforcement of the agreement as well as for the hiring of legal counsel in furtherance of such enforcement, and for additional damages caused by Defendant's breach upon proof.

## COUNT V

## BREACH OF CONTRACT
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

77. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

78. Every contract contains an implied covenant of good faith and fair dealing under which the parties are bound to perform their obligations in good faith and to deal fairly with the other party to the agreement.  Plaintiff and Defendant herein, first entered into an agreement in the foreclosure case relating to the subject property whereby a Consent Final Judgment of foreclosure was the result.  The parties subsequently entered into a HAMP Permanent Modification Agreement to which Plaintiff fully complied and which Defendant has breached.

79. Plaintiff has performed all material obligations required of him to pursuant to the agreements and all conditions required by the contracts for Defendant's performance have

occurred. Chase violated the covenant of good faith and fair dealing by engaging in the acts alleged herein, including the following practices:

a. Chase force-placed flood insurance on Mr. Cabrera's secured property through American Security Insurance Company despite knowledge of an already existing policy through Liberty American Select Insurance Company (now called Philadelphia Indemnity Insurance Company), which had never lapsed, and made no effort to correct its error, but instead, breached the Permanent Modification Settlement Agreement entered into with Mr. Cabrera;

b. Upon being made aware of the duplicate insurance policies purchased by Chase on behalf of Mr. Cabrera, Chase ignored the evidence of such fact and manufactured and fabricated unfounded bases upon which to continue to its noncompliance with the terms of the settlement agreement with Mr. Cabrera;

c. Where Chase misrepresented facts to the court in the foreclosure action related to the subject property in order that the court would decline jurisdiction to determine the enforceability of the parties' agreement;

d. Where Chase made false representations of cooperation and reconciliation with regard to the subject agreement, both orally and in writing, to Mr. Cabrera's counsel in order to lull Mr. Cabrera into a false sense of security that Chase was acting in good faith when, in fact, Chase was biding its time to continue its breach in aid of bad faith litigation tactics,

e. Where Chase entered into an agreement with Mr. Cabrera in bad faith in order to procure Mr. Cabrera's consent to a Final Judgment of Foreclosure with the intention of swindling Mr. Cabrera despite promises to modify his home.

f.  Where Chase entered into a Permanent Modification Agreement with Mr. Cabrera in bad faith with the intention of breaching said agreements after Chase accepted payments from Mr. Cabrera pursuant to the agreement;

g.  Where Chase force-placed flood insurance with sufficient flood insurance already in place, choosing an insurance provider in bad faith and contrary to the parties' reasonable expectations by subjecting Mr. Cabrera to pay grossly inflated premiums in order to cover the cost of unnecessary insurance coverage; coverage in excess of the replacement cost of the covered dwelling; and commissions and kickbacks (through captive reinsurance schemes) Chase accepted from the insurance providers that it selected;

h.  Failing to make any attempt to determine that flood insurance was already in place, or to obtain flood insurance in the open market or otherwise reasonably exercising its discretion in selecting insurance providers and instead selecting insurance providers based upon arrangements where any needed flood insurance policies are repeatedly purchased at inflated premiums through the same companies in order to maximize Chase's profits through commissions and undisclosed agreements for kickbacks;

i.  Charging excessive and unreasonable flood insurance premiums to Plaintiff while providing excessive and unnecessary insurance coverage;

j.  Accepting and keeping as their own profits percentage-based commissions on force-placed flood insurance policies charged to Plaintiff, thus creating an incentive for Chase to select the most expensive policy available in order to maximize the commission it receives;

24

k.  Accepting purported reinsurance premiums and/or commissions in return for placing borrowers with particular force-placed insurance providers;

l.  Backdating force-placed insurance policies to cover time periods which have already passed and for which there was absolutely no risk of loss because there was no flood;

m. Procuring force-placed insurance policies to cover time periods during which Plaintiff was already covered pursuant to a Lender's Loss Payable Endorsement; and

n.  Failing to provide Mr. Cabrera with any opportunity to opt out of having their force-placed insurance policies provided by an insurer with whom Chase had a commission and/or captive reinsurance arrangement.

80. By these acts, Chase has breached the implied covenant of good faith and fair dealing contained within the Permanent Modification Settlement Agreement with Mr. Cabrera.

81. As a result of these breaches of contract, Plaintiff suffered direct and proximate harm and injury and is entitled to damages.

## COUNT VI

## FRAUD

82. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

83. Chase engaged in fraud in entering into the HAMP Permanent Modification Settlement Agreement with Mr. Cabrera insofar as Chase never intended to comply with the terms of the agreement when entering into the agreement.  The actions of Chase as described herein are immoral, unethical, oppressive and substantially harmful to Mr. Cabrera.

84. Mr. Cabrera was injured in fact and lost money and property as a result of Chase's conduct. In particular and without limitation, Mr. Cabrera was charged unreasonable and unnecessarily excessive force-placed flood insurance premiums for insurance that had limited coverage and/or covered periods in which there was no risk of loss.

85. Had Chase acted fairly and reasonably, Plaintiff would only have been charged premiums consistent with premiums in the open market, would have obtained improved coverage in amounts that did not exceed to true replacement value of his dwelling, and would not hae been charged for insuring periods of time during which there was no risk of loss that needed to be insured.   Instead, Plaintiff lost money and property unnecessarily as a result of Chase's conduct.

86. Chase was informed on numerous occasions, both verbally and in writing, of Mr. Cabrera's timely purchase of all necessary insurance coverage regarding the subject property, including flood insurance, which had not lapsed and for which there was no basis for Chase to purchase force-placed insurance coverage, but Chase, nevertheless purchased such force-placed coverage on behalf of Mr. Cabrera for the purpose of collecting substantial commissions and reinsurance kickbacks that Chase arranged to receive from the insurance provider that it selected.

87. Plaintiff relied on the representations of Defendant and on the requirement that Defendant act in good faith in entering into the HAMP Permanent Loan Modification Agreement and into the Consent Final Judgment of Foreclosure and, without such reliance, would not have entered into said agreements.

88. Chase committed fraud by engaging in the acts alleged herein, including the following:

a. Chase force-placed flood insurance on Mr. Cabrera's secured property through American Security Insurance Company despite knowledge of an already existing policy through Liberty American Select Insurance Company (now called Philadelphia Indemnity Insurance Company), which had never lapsed, and made no effort to correct its error, but instead, breached the Permanent Modification Settlement Agreement entered into with Mr. Cabrera;

b. Upon being made aware of the duplicate insurance policies purchased by Chase on behalf of Mr. Cabrera, Chase ignored the evidence of such fact and manufactured and fabricated unfounded bases upon which to continue to its noncompliance with the terms of the settlement agreement with Mr. Cabrera;

c. Where Chase misrepresented facts to the court in the foreclosure action related to the subject property in order that the court would decline jurisdiction to determine the enforceability of the parties' agreement;

d. Where Chase made false representations of cooperation and reconciliation with regard to the subject agreement, both orally and in writing, to Mr. Cabrera's counsel in order to lull Mr. Cabrera into a false sense of security that Chase was acting in good faith when, in fact, Chase was biding its time to continue its breach in aid of bad faith litigation tactics;

e. Where Chase entered into an agreement with Mr. Cabrera in bad faith in order to procure Mr. Cabrera's consent to a Final Judgment of Foreclosure with the intention of swindling Mr. Cabrera despite promises to modify his home.

f.  Where Chase entered into a Permanent Modification Agreement with Mr. Cabrera in bad faith with the intention of breaching said agreements after Chase accepted payments from Mr. Cabrera pursuant to the agreement;

g.  Where Chase force-placed flood insurance with sufficient flood insurance already in place, choosing an insurance provider in bad faith and contrary to the parties' reasonable expectations by subjecting Mr. Cabrera to pay grossly inflated premiums in order to cover the cost of unnecessary insurance coverage; coverage in excess of the replacement cost of the covered dwelling; and commissions and kickbacks (through captive reinsurance schemes) Chase accepted from the insurance providers that it selected;

h.  Failing to make any attempt to determine that flood insurance was already in place, or to obtain flood insurance in the open market or otherwise reasonably exercising its discretion in selecting insurance providers and instead selecting insurance providers based upon arrangements where any needed flood insurance policies are repeatedly purchased at inflated premiums through the same companies in order to maximize Chase's profits through commissions and undisclosed agreements for kickbacks;

i.  Charging excessive and unreasonable flood insurance premiums to Plaintiff while providing excessive and unnecessary insurance coverage;

j.  Accepting and keeping as their own profits percentage-based commissions on force-placed flood insurance policies charged to Plaintiff, thus creating an incentive for Chase to select the most expensive policy available in order to maximize the commission it receives;

28

k.  Accepting purported reinsurance premiums and/or commissions in return for placing borrowers with particular force-placed insurance providers;

l.  Backdating force-placed insurance policies to cover time periods which have already passed and for which there was absolutely no risk of loss because there was no flood;

m.  Procuring force-placed insurance policies to cover time periods during which Plaintiff was already covered pursuant to a Lender's Loss Payable Endorsement; and

n.  Failing to provide Mr. Cabrera with any opportunity to opt out of having their force-placed insurance policies provided by an insurer with whom Chase had a commission and/or captive reinsurance arrangement.

89. By these acts, Chase committed fraud in entering into the Consent Final Judgment and the Permanent Modification Settlement Agreement with Mr. Cabrera.

90. As a result of these breaches of contract, Plaintiff suffered direct and proximate harm and injury and is entitled to damages.

91. Plaintiff is informed and believes and thereon alleges that defendant entered into the agreements here at issue for the specific purpose of depriving plaintiff of his property, and to purchase a policy of force-placed flood insurance with American Security Insurance Company, with whom Chase had a commission and/or captive reinsurance arrangement, in order to maximize Chase's profits through commissions and undisclosed agreements for kickbacks, and to defraud plaintiff, all with malice toward plaintiff.

92. Plaintiff has been injured by loss of property, loss of reputation, expenditure of funds for the costs of litigation and for legal services and pursing enforcement of his agreement with Chase, and by suffering the uncertainty on a daily basis inasmuch as Chase's actions caused his home to be in limbo.  Plaintiff seeks compensatory damages for said acts.

93. These acts were malicious, fraudulent and oppressive, thereby also justifying an award of punitive damages, on proof to be demonstrated at trial, so that Defendant and others similarly situated will not engage in such conduct in the future.

## COUNT VII

## FRAUD PURSUANT TO EXPRESS SAVINGS CLAUSE OF RULE OF CIVIL PROCEDURE 1.540(b) AND REQUEST FOR RELIEF FROM CONSENT FINAL JUDGMENT

94. The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

95. Chase engaged in fraud in entering into the Consent Final Judgment of Foreclosure and engaged in fraud upon the court following entry of said judgment.

96. The Consent Final Judgment was entered into based upon the express condition and promise by Chase of an extended foreclosure sale date of at least one-hundred twenty (120) days from the date of the judgment for the express purpose of allowing Chase sufficient time to complete the HAMP application for the loan underlying the foreclosure lawsuit prior to a foreclosure sale. (See copy of Consent Final Judgment and communications between counsel for the parties underlying the agreement attached hereto as Exhibit "C").

97. Chase entered into said agreement disingenuously for the purpose of luring Mr. Cabrera into a quagmire whereby Chase would be able to accept funds from Mr. Cabrera pursuant to HAMP procedures, and then breach the agreement such that Mr. Cabrera would be without recourse in the state court action to enforce the agreement.

98. Because foreclosure plaintiffs in Miami-Dade County are afforded a degree of control in determining when a Final Judgment will be vacated following presentation to the court of

a permanent modification agreement, Chase was aware, and took advantage of the court's procedures in order that it would be possible to take advantage of Mr. Cabrera.

99. The actions of Chase as described herein are immoral, unethical, oppressive and substantially harmful to Mr. Cabrera.

100.      Mr. Cabrera was injured in fact and lost money and property as a result of Chase's conduct.

101.      Chase was informed on numerous occasions, both verbally and in writing, of Mr. Cabrera's timely purchase of all necessary insurance coverage regarding the subject property, including flood insurance, which had not lapsed and for which there was no basis for Chase to purchase force-placed insurance coverage, but Chase, nevertheless purchased such force-placed coverage on behalf of Mr. Cabrera for the purpose of collecting substantial commissions and reinsurance kickbacks that Chase arranged to receive from the insurance provider that it selected.

102.      Nevertheless, Chase ignored the documentary proof that belied the alleged basis for which their breach was based and unreasonably continued to allege a lack of proof of insurance despite being in possession of such proof.

103.      Plaintiff relied on the representations of Defendant and on the requirement that Defendant act in good faith in entering into the HAMP Permanent Loan Modification Agreement and into the Consent Final Judgment of Foreclosure and, without such reliance, would not have entered into said agreements.

104.      Chase misrepresented facts to the court in the foreclosure action related to the subject property in order that the court would decline jurisdiction to determine the enforceability of the parties' agreement.

105.    Chase made false representations of cooperation and reconciliation with regard to the subject agreement, both orally and in writing, to Mr. Cabrera's counsel in order to lull Mr. Cabrera into a false sense of security that Chase was acting in good faith when, in fact, Chase was biding its time to continue its breach in aid of bad faith litigation tactics.

106.    Chase entered into an agreement with Mr. Cabrera in bad faith in order to procure Mr. Cabrera's consent to a Final Judgment of Foreclosure with the intention of swindling Mr. Cabrera.

107.    Chase entered into a Permanent Modification Agreement with Mr. Cabrera after entry of the Consent Final Judgment in bad faith with the intention of breaching said agreements after Chase accepted payments from Mr. Cabrera pursuant to the agreement;

108.    By these acts, Chase committed fraud in entering into the Consent Final Judgment and the Permanent Modification Settlement Agreement with Mr. Cabrera.

109.    As a result of these breaches of contract, Plaintiff suffered direct and proximate harm and injury and is entitled to specific performance of the HAMP Permanent agreement and that the Consent Final Judgment be vacated pursuant to the express savings clause of Rule of Civil Procedure 1.540(b) in that, as a result of the parties' agreement following the Consent Final Judgment, it is no longer equitable that said judgment should have prospective application as to Mr. Cabrera.

110.    Plaintiff is informed and believes and thereon alleges that defendant entered into the agreements here at issue for the specific purpose of depriving plaintiff of his property.

111.    Plaintiff has been injured by loss of property, loss of reputation, expenditure of funds for the costs of litigation and for legal services and pursing enforcement of his agreement with Chase, and by suffering the uncertainty on a daily basis inasmuch as

Chase's actions caused his home to be in limbo. Plaintiff seeks compensatory damages for said acts.

112.     These acts were malicious, fraudulent and oppressive, and also constituted fraud upon the court, thereby also justifying an award of punitive damages, on proof to be demonstrated at trial, so that Defendant and others similarly situated will not engage in such conduct in the future.

**COUNT VIII**

**UNJUST ENRICHMENT**

113.     The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

114.     Pursuant to the HAMP Trial Agreement entered into between Plaintiff and Defendant on August 26, 2013, Plaintiff complied fully including tender of three (3) payments in the amount of $1,411.54 on August 26, 2013, September 23, 2013 and October 23, 2013, which were accepted by Defendant.

115.     Pursuant to the HAMP Permanent Agreement entered into between the Plaintiff and Defendant on November 27, 2013, Plaintiff complied fully including tender of four (4) more payments in the amount of $1,411.57 on November 27, 2013, December 26, 2013, January 28, 2014, and February 24, 2014, which were accepted by Defendant.

116.     Upon Plaintiff's tender of payment in the same amount to Defendant on March 27, 2014 to satisfy the amount due pursuant to the HAMP Permanent Agreement for April 1, 2014, Defendant refused to accept said payment.

117.     No part of the amounts paid by Plaintiff to Defendant from August 26, 2013 through February 24, 2014 were returned to Plaintiff.

118.    Despite sufficient and better flood insurance securing the subject property since prior to the relevant time period, Defendant failed to make any attempt to determine that flood insurance was already in place, and ignored evidence of such policy produced by Plaintiff.

119.    Chase charged excessive and unreasonable flood insurance premiums to Plaintiff for excessive and unnecessary insurance coverage and accepted, keeping as their own profits, percentage-based commissions on force-placed flood insurance policies charged to Plaintiff.

120.    Chase also accepted purported reinsurance premiums and/or commissions in return for placing borrowers with a particular force-placed insurance provider.

121.    These monies were accepted and retained by Chase under circumstances that are inequitable absent payment to Plaintiff.

122.    Chase is aware of its receipt of the above-described monies and benefits.

123.    Chase received the above-described monies and benefits to the detriment of Plaintiff and Chase continues to retain the above-described monies and benefits to the detriment of Plaintiff.

124.    As a result of Chase's unjust enrichment, Plaintiff has sustained damages of, at least, $9,880.99 in payments made pursuant to both phases of the HAMP agreement, in addition to further damages in an amount to be determined at trial and seeks full disgorgement and restitution of Chase's enrichment, benefits, and ill-gotten gains acquired as a result of the wrongful conduct alleged above.

## COUNT IX

## PROMISSORY ESTOPPEL

125.     The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

126.      In November 2013 Defendant, pursuant to a written HAMP Permanent Agreement prepared by Chase pursuant to Plaintiff's previous compliance with a HAMP Trial Agreement, promised to accept the agreed upon modified monthly payments of $1,411.57.

127.     Defendant reasonably should have expected that such promise would induce action in the form of payments in said amount on the part of Plaintiff.

128.     Defendant's promise did, in fact, induce such action by Plaintiff such that Plaintiff made several payments in reasonable reliance upon Defendant's promise to Plaintiff's detriment.

129.     Injustice can only be avoided by enforcement of Defendant's promise to continue to accept payments in the stated amount pursuant to the terms of the HAMP Permanent Agreement entered into in November 2013.

130.     Specific performance by Defendant pursuant to the agreement between Plaintiff and Defendant is therefore appropriate in this case based upon principles of promissory estoppel and, alternatively, should the property become unavailable for specific performance as a result of Defendant's breach, Defendant should be liable to Plaintiff for damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    That the Court vacate the Consent Final Judgment of foreclosure entered in state court for fraud and as no longer equitable that said judgment have prospective application as to Mr. Cabrera and that to require specific performance of the November 2013 HAMP Permanent Agreement entered into between the parties, or alternatively, for damages related thereto;

B.    That the Court award any and all damages allowable pursuant to the FDCPA, FCCPA, and FDUTPA on the basis of Defendant's violations of said statutes as well as such additional orders or judgments as may be necessary to prevent these practices and to restore Plaintiff any money or property which may have been acquired by means of Defendant's violations of said statutes;

C.    That the Court award Plaintiff appropriate relief, to include contractual damages, disgorgement, and restitution;

D.    That the Court award Plaintiff preliminary or other equitable or declaratory relief as may be appropriate by way of applicable state or federal law;

E.    That the Court award in excess of $75,000 general damages for defendants' fraud;

F.    That the Court award punitive damages to Plaintiff according to proof;

G.    That the Court award Plaintiff reasonable attorneys' fees and costs incurred herein.

H.    That the Court award Plaintiff such other favorable relief as may be available and appropriate under law or at equity and that the Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  October 7, 2014

By:

JASON WEISSBEIN (42874)
WEISSBEIN LAW, PLLC
5500 South Flamingo Road
Suite 203
Cooper City, Florida 33330
Telephone: (954) 593-1121
E-Mail: jason@weissbein.com

Attorney for Plaintiff